The evidence tended to show that on the night of 11 October, 1930, between the hours of six and seven o'clock, Charles Henry was seen about 200 yards from the Y. of defendant, headed toward the railroad. At the time he was walking along the street, apparently under the influence of liquor. A train of defendant backed into the Y. shortly after dark, without a light. A witness for plaintiff testified that as the train was backing in for the night that he stopped to let the train pass. He said: "After it (train) passed I went on and crossed the track and went where I was bound. I did not see any sign of this man when I was standing there. I didn't look. . . . I could see the train was backing toward me, and I stopped to let it pass."
Early the next morning an alarm was given that there was a dead man on the track, and the body of plaintiff's intestate was found between the tracks with his head cut off and lying on the outside of one of the rails. The first witness who reached his body said: "There wasn't *Page 278 
so much blood there, it didn't look like to me, but there was some blood there. It didn't look like it was right fresh to me, but it was blood. It didn't look like it was dry to me. At the time I found the body the train was on that siding. The train had not gone back from where it went that night. It had not gone back to the station then. From the edge of the street I guess the body might have been twenty feet, or something like that. . . . This section of the railroad where this body was found is used by the public as a public passway. . . . People walk there, but it is no street. People use it for a public passway." There was no street light on the corner near the place where the body was found. There was further evidence tending to show that when the train backed in from the station on Saturday night around seven o'clock that no whistle was blown, no light displayed, and no lookout stationed on the back of the train. An undertaker, witness for plaintiff, who prepared the body for burial said: "I never noticed any bruises on the body if there was any, and it would be hard to detect it on a dark complexion, that is all I observed with reference to the body, except the head was completely severed from the body and the right shoulder crushed where the wheel passed over the body. . . . His body was not completely stiff. Rigor mortis had not completely set in, when I got there next morning, I don't know what time it was. I don't know whether it was after seven o'clock, it was light when I got there. . . . After a person's death rigor mortis comes on and passes off. It generally is complete within six hours in some and in some it does not show in six. There's no two bodies alike."
The defendant offered no evidence, and judgment of nonsuit was entered, from which the plaintiff appealed.
The theory upon which the right to recover is predicated, is that the plaintiff's intestate was down on the track in a helpless condition, and consequently should have been seen by those in charge of the train which was backed into the Y. for the night. The plaintiff's intestate was never seen within 200 yards of the place where his body was found. The bare fact that the train was backing without a light and that the decapitated body of Charles Henry was found on the track approximately twelve hours afterwards, is not sufficient evidence to be submitted to the jury, and the ruling of the trial judge was correct. Indeed, the case is governed by the principles announced in Austin v. R. R., 197 N.C. 319, 148 S.E. 446.
Affirmed. *Page 279