C. R. ALLMAN, ADMINISTRATOR OF THE ESTATE OF JOSEPH ALLMAN, JR., DECEASED, v. SOUTHERN RAILWAY COMPANY.

(Filed 14 December, 1932.)

**1. Trial D a—**

On a motion of nonsuit the evidence must be taken in the light most favorable to plaintiff.

**2. Negligence D b—Proposed testimony held properly excluded as irrelevant.**

In an action for actionable negligence testimony of an understanding between the injured person and another as to meeting each other at a time subsequent to the happening of the injury *is held* not relevant to the manner in which the injury occurred, and an exception to its exclusion is not sustained.

**3. Appeal and Error J e—It must appear what excluded testimony would have been in order for exception to be considered on appeal.**

Where an exception is entered to the exclusion of certain testimony it must appear of record what the excluded testimony would have been in order for the exception to be considered on appeal.

**4. Railroads D c—Evidence held insufficient to overrule railroad's nonsuit in action for death of pedestrian killed on track.**

Evidence disclosing that the body of the plaintiff's intestate was found on a straight track where it was crossed by a path, that the headlight on the train which struck the intestate was burning and could have been seen for some distance, and there is no evidence that the intestate was down on the track in a helpless condition and should have been seen by the engineer and his condition appreciated in time to have avoided the injury, the railroad company's motion as of nonsuit is properly sustained.

APPEAL by plaintiff from *McElroy, J.,* at March Term, 1932, of BURKE. Affirmed.

This was an action for actionable negligence brought by plaintiff against defendant alleging damage. Plaintiff's evidence was to the effect: Ben Carswell was the last person to see plaintiff's intestate, Joe Allman, Jr., alive, so far as the record discloses. On the night he was killed, Joe Allman, Jr., his sister Allie Bell Allman, his first cousin Elsie Walker, and Carswell left the home of Carswell at 12:30 or 1:00 a.m., on 20 April, 1931. Joe Allman, Jr., left the party, the others taking the road to take Elsie Walker home and he taking a customary path towards the culvert under a fill of defendant's railroad. After the path reached the railroad it went with the railroad some 300 or 400 yards and hit another road which led to Allman's home. It was nearer to go the path than the road.

Ben Carswell testified, in part: "After we took Elsie Walker home we came back on the railroad and headed up this way, facing west. It was about forty minutes from the time we last heard Joe's voice until we got back to the railroad where the path crossed the culvert. After we got back on the railroad from the Walker home we met a freight train about half way from where the path comes up to her house from the railroad and where the boy got killed. The train was traveling east. It is about 300 yards from this crossing to the culvert. We had traveled west about 150 yards with the track when we met the train. *The train had headlights.* When I first saw the train it was coming out of the cut about four or five hundred yards from me; *it was pretty light atmosphere; no fog to amount to anything.* Going towards Bridgewater the track curves to the left. *When I saw the train coming I stopped and got out of the way.* I did not see anything except

the telegraph posts, about 12 inches across, I suppose—some of them as large as a man's body—all the way up to the cut with the lights of the train shining on them. I did not see Joe Allman there. . . . At the point where I met the train, the fill was 15 or 20 feet high and got higher going west. I didn't pay any attention to how long the train was; it was going at pretty well full tilt at full speed. I would say it was going about thirty miles an hour. I saw Joe's body after the train passed lying in between the railroad tracks at the culvert—I saw him from three to five minutes after it passed. I was standing about 150 yards from where we found his body when the train passed; the train did not stop. His body was pretty much at the edge of the culvert about two rails from the path, where it come on the track. The path comes upon the railroad, crosses the culvert, comes up on one side and down on the other. After the train passed there was no light there and I couldn't tell much about his body except that it was cut in two. The body was lying in between the rails and the head lay out on the end of the ties on the north side going west. . . . From the point where the body was on the fill and culvert the track was straight about 250 yards looking west. . . . (The court) He can say whether he heard any. Answer: No sir, I didn't hear any bell or signal. . . . The grade is a gradual grade all the way from Bridgewater to the top of that Linwood Hill. I didn't count the cars on that train but I would say the train was three or four hundred yards long. . . . I never saw him alive after that, closer than a half mile from the track. . . . The public crossing is about four hundred yards or maybe more east of the culvert. . . . That cut to the west was where we first noticed the train and *we could see the headlights of the train shining down the track about four or five hundred yards;* we could see the telegraph poles on the opposite side where the light reflected around. After the train passed we walked on up the track until we found Joe's body."

*Mull & Patton for plaintiff.*
*Ervin & Ervin for defendant.*

PER CURIAM. At the close of plaintiff's evidence, the defendant made a motion in the court below for judgment as in case of nonsuit. C. S., 567. The court below sustained the motion, and in this we can see no error. The evidence must be taken in the light most favorable to plaintiff. The exceptions and assignments of error to the exclusion of certain evidence, as follows, cannot be sustained: (1) In regard to Ben Carswell having an understanding that the deceased, Joe Allman, Jr., would meet him *near the culvert.* This throws no light on the controversy as to how

plaintiff's intestate was killed. (2) "If he had been standing on track could you have seen him?" was a question propounded to Carswell. (3) "Were you expecting anyone there at that time?" Question propounded to Carswell. Conceding, but not deciding, that the above questions were competent, the record does not disclose what the answers of the witness would have been, so that this Court could determine their relevancy, competency and materiality. *S. v. Brewer,* 202 N. C., at p. 193. There is no evidence sufficient to be submitted to the jury that the plaintiff's intestate was asleep or drunk on the track, or in a helpless condition on the track, or oblivious or otherwise insensible of danger. The plaintiff's intestate was not at a crossing. The headlight of defendant's engine was burning, throwing the light a far distance.

In *Davis v. R. R.,* 187 N. C., at p. 148, citing many authorities, speaking to the subject: "The decisions in this State have been insistent upon the principle that a pedestrian voluntarily using a live railroad track as a walkway for his own convenience is required at all time to look and to listen, and to take note of dangers that naturally threaten and which such action on his part would have disclosed, and if in breach of this duty and by reason of it he fails to avoid a train moving along the track and is run upon and killed or injured, his default will be imputed to him for contributory negligence and recovery is ordinarily barred." *Henry v. R. R., ante,* 277.

In *Denny v. Snow,* 199 N. C., at p. 774, it is written: "A verdict or finding must rest upon facts proved, or at least upon facts of which there is substantial evidence, and cannot rest upon mere surmise, speculation, conjecture, or suspicion. There must be legal evidence of every material fact necessary to support the verdict or finding, and such verdict or finding must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities." 23 C. J., pp. 51-2; *S. v. Johnson,* 199 N. C., 429; *Shuford v. Scruggs,* 201 N. C., at p. 687.

The death of plaintiff's intestate was a deplorable tragedy, but there is no sufficient evidence to show that plaintiff's intestate was in such a condition, on or near the track, that it was the duty of defendant's engineer, in the exercise of due care, to have seen him and to have resolved all doubts in favor of life and limb, short of imperiling the lives of persons on the train, and to use every reasonable means necessary to stop and avoid the injury. The material allegations of the complaint are not supported by the evidence. The evidence is not sufficient to bring plaintiff within the principle laid down in *Hill v. R. R.,* 169 N. C., 740. The judgment of the court below is

Affirmed.