SEAWELL, J., dissenting.
CLARKSON and DEVIN, JJ., concur in dissent.
Civil action for recovery of damages for alleged wrongful death. C. S., 160, 161.
Plaintiff alleges in part that on 30 April, 1935, the intestate, Doris Marie Mills, eighteen months and twenty days of age, "momentarily unobserved by her mother, ran out of the house, crossed the front yard thereof, entered the . . . public road," and was killed by a Chevrolet motor truck of defendant, Henry Moore, traveling from the direction of Pleasant Hill toward Ervin's Cross Roads, and operated by his servant and agent, the defendant Clem Jenkins, Jr., "in the prosecution and in the course of his master's business"; that said truck ran over her when she was about the middle of the public road in front of her parents' home in Jones County, North Carolina; that the "public road where it passed the house is straight for a considerable distance in both directions from the place where said child entered the same, and anyone driving a motor vehicle approaching her along said road from either direction, and particularly from the direction of Pleasant Hill, could and would, *Page 27 
by the exercise of even slight observation, have seen that said child had entered and was in said public road and would be struck by such motor vehicle if it was not stopped"; that defendant Clem Jenkins, Jr., while so operating said truck, "willfully, carelessly, recklessly, negligently, unlawfully and wantonly ran the said truck over and upon the said Doris Marie Mills," killing her instantly; and that her death "was solely and proximately caused by the willful, careless, reckless, negligent, unlawful and wanton conduct of the said defendant Clem Jenkins, Jr., . . . as aforesaid, and without which her death as aforesaid would not have occurred."
While defendants, in their separate answers, admit that on 30 April, 1935, the defendant Clem Jenkins, Jr., was the agent and servant of defendant Moore, and was operating a Chevrolet truck of eight-ton capacity, belonging to Moore, in hauling logs from Pleasant Hill in Jones County to Ervin's Cross Roads in Lenoir County, they deny all other material allegations of the complaint.
On the trial below plaintiff offered evidence tending to show that intestate, a child eighteen months and twenty days of age, when she was killed on the afternoon of 30 April, 1935, in front of her parents' home, lived with her parents, Mr. and Mrs. Fred Mills, in a house located on the north side of the road or highway leading from Pleasant Hill in Jones County, North Carolina, to Ervin's Cross Roads in Lenoir County, that is, on the right-hand side of one traveling toward Ervin's Cross Roads; that, according to Mrs. Mills she "imagines" the front door is about ten feet from the road, "practically right on the road," and according to Mr. Mills about thirty feet from the road; that there was no fence around the house; that in the yard there were 7 or 8 trees — "none of them are so large"; that between the house and the road, and some four or five feet from the road, were stables; and that between the house and stables some lumber was piled on the edge of the road, "a little short pile," as to which Mrs. Mills guessed it was "about two feet from the edge of the road," and she thought it was not over six inches high by ten or twelve feet long, and as to which Mr. Mills said: "I imagine about one foot from the highway, off from where they pulled the road. It was about 1 1/2 feet high."
Plaintiff further offered evidence tending to show that the road in front and for about 325 yards on each side of the Mills home was straight; that it was about 30 or 40 feet wide, on each side of which was "a ditch, where they pull the road"; that it was a good road, "sandy, before you get to the house," but "no deep ruts there where cars had to stay in — not by our home . . . enough room there for two trucks to pass." "It is not very deep sand and only one rut where all cars follow that one rut along where she was killed." *Page 28 
Plaintiff further offered evidence tending to show intestate was killed about five o'clock in the afternoon; that about fifteen minutes before, she and her two older brothers, aged 8 and 4 years, respectively, were there at the house when relatives left, after which intestate was playing around a sewing machine at which her mother was at work, on the right side of the front door of the house, facing the road, and the two little boys had taken their wagon and gone across the road to a field in front of the house to get lightwood stumps; that a truck, consisting of a cab and trailer loaded with logs, passed the house; that just then the mother of intestate missed her and on going to front yard to look for her saw her lying "in the middle of the road" . . . "about five feet from the edge of the pile of lumber on up to where she was"; that the brothers were then across a little caterpillar ditch on the other side of the road from the house, in the field, with the wagon; that while the mother ran to the field for the father, the older brother carried intestate to the porch; that she was dead; that there was "a little scar about its head, back of its head, a very little scar, it looked like, to have killed the child . . . just a slight place on the side of its head, above its ear, kinder back of its ear; just a little red looking place" as one witness testified; "a scar on its head, but I disremember where . . . bleeding at the nose and ear . . . other marks on the child were just a place on its head, . . . don't remember whether on the back of its head or on the side of the head," said another; and "It was injured on the back of its head . . . a small scar . . . it seems like there were other small scars on its head," another stated.
Plaintiff further offered evidence tending to show that there was a spot of blood in the road where intestate lay; that this spot was variously described as being "in the middle of the road," "right in the middle of the road, kinder off from the lumber pile," and, by the father of intestate, as being "in the middle of the highway . . . I reckon it was about five yards from the pile of lumber to the blood. . . . The end of the pile of lumber towards the house was nearest the blood; that would put the pile of lumber between the spot of blood and the house; it was 15 yards from the porch to where the baby was lying."
Plaintiff further offered evidence tending to show that while one Thomas had two trucks hauling logs that day along the road by the Mills home, neither of them had a cab, and that the last truck seen to pass there was a Chevrolet with a cab and trailer, and loaded with logs, operated by defendant Clem Jenkins, Jr., and traveling toward Ervin's Cross Roads; that this latter truck was heard "to go from whatever gear he was pulling in back in low and he went on by Mills' house"; that about a half mile from Mr. Mills' a witness met and spoke to Jenkins, who stopped to let witness pass; that then "he was running slow — it *Page 29 
looked to me as though he was driving the truck in a very careful manner"; and that in just a minute or two, variously estimated at three to ten minutes, the mother of intestate made an outcry.
Plaintiff further offered evidence tending to show that in consequence of what Mr. Mills, the father of the intestate, said to him, one E. B. Thomas later went to look for defendant Clem Jenkins, Jr., and saw him at the mill, 13 1/2 miles away, after he had unloaded, standing there at the left-hand side of his truck, checking his oil. Thomas testified: "I drove up side of him and asked did he know what he had done and he said, `No, why? and I said, `Do you know that you killed Mr. Mills' child?' and he said, `No, he didn't kill a child; didn't see it or know anything about it; that he saw two little children playing on the left-hand side of the road.'"
Plaintiff further offered evidence tending to show that intestate was in good health — "could walk very good — had been walking since she was 11 months old — could run around anywhere she wanted to."
From judgment as in case of nonsuit at the close of plaintiff's evidence, plaintiff appeals to Supreme Court and assigns error.
Taking all the evidence shown in the record on this appeal in the light most favorable to plaintiff, and giving to him the benefit of every reasonable inference therefrom, distressing though the situation is, we are unable to find error in the judgment below. Rountree v. Fountain,203 N.C. 381, 166 S.E. 329.
In order to establish actionable negligence: "The plaintiff must show: First, that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to plaintiff, under the circumstances in which they were placed; and, second, that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed," Whitt v. Rand, 187 N.C. 805, 123 S.E. 84; Murray v. R.R., 218 N.C. 392, 11 S.E.2d 326, and cases cited.
Negligence is not presumed from the mere fact of injury or that the intestate was killed. Austin v. R. R., 197 N.C. 319, 148 S.E. 446;Henry v. R. R., 203 N.C. 277, 165 S.E. 698; Rountree v. Fountain,supra; Ham v. Fuel Co., 204 N.C. 614, 169 S.E. 180; Harrison v. R. R.,204 N.C. 718, 169 S.E. 637; Fox v. Barlow, 206 N.C. 66, *Page 30 173 S.E. 43; Cummings v. R. R., 217 N.C. 127, 6 S.E.2d 837; Mercerv. Powell, 218 N.C. 642.
There must be legal evidence of every material fact necessary to support the verdict and the verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities." 23 C. J., 51; S. v. Johnson,199 N.C. 429, 154 S.E. 730; Denny v. Snow, 199 N.C. 773, 155 S.E. 874;Shuford v. Scruggs, 201 N.C. 685, 161 S.E. 315; Allman v. R. R.,203 N.C. 660, 163 S.E. 981; Rountree v. Fountain, supra; Cummings v. R.R., supra; Mercer v. Powell, supra.
If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed. Whether there is enough evidence to support a material issue is a matter of law.
The alleged negligence relied upon and charged by plaintiff in the present case is that the defendants, in operating the truck in question along the road, failed to keep a proper lookout, which failure proximately caused the death of the intestate.
It is a general rule of law, even in absence of statutory requirements, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty, it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway. Murray v. R. R., supra.
These principles applied to the evidence offered leaves the instant case in the realm of speculation. Assuming that there is sufficient evidence to show that the intestate was stricken by the truck of the defendant, there is no evidence as to what part of the truck struck her. No one saw the intestate in the road at any time before she was stricken. How long she had been there no one knows. The physical facts present no reasonable theory to the exclusion of many others as to the circumstances under which the accident occurred. When did she enter the road? Was it at a time when the driver of the truck, seated in the cab on the opposite side from the Mills yard, could have seen her? Or, did she run under and into the trailer after the cab passed? Was she stricken by the front of the truck, or was she stricken by some part of the trailer? The evidence is consonant with any of many theories which may be advanced with equal force, but all of which are speculative and rest on mere conjecture.
In the case of Rountree v. Fountain, supra, this Court sets forth principles of law applicable and applies same to a factual situation similar to that here. There a four-year-old child was run over by an oil *Page 31 
truck as it backed into an alley between a store building and the lot on which the child resided with his mother. The truck backed into the alley to transfer oil from the tank on the truck to the tank in the store. There was no objection to defendant using the alley, though it as well as the garage at the north end of it, were rented to the mother of the intestate along with the dwelling. On the morning of the accident the child went across the alley to the home of a neighbor, who gave him a small box and left him in her yard picking up berries under a magnolia tree, and went across the street. A few minutes afterward an employee of defendant backed a gasoline or oil truck into the alley, suddenly left the truck, and went to the owner of the store and exclaimed, "Come here, I have killed a child." The body was found about three feet from the sidewalk and about the same distance from the store. blood was on the sand; nearby was the box. There were bruises on the child's body and his nose was bleeding. The cause of his death was a fractured skull. Adams, J., speaking for the Court, after stating facts and applicable principles of law, said: "No one saw the deceased in the alley at any time before the impact. How long he had been there no one knows. There is no evidence he was there when the truck began to move backward. When last seen alone he was on the Southerland lot. When did he leave the magnolia tree? Had he been in the alley long enough for the driver to see him and avert the injury, or did he at the fatal moment rush into the alley immediately in front of the advancing truck? The witnesses do not inform us, and at this point the plaintiff's case fails him. In the absence of evidence we cannot conclude that the deceased went into the alley at any particular time. Negligence is not presumed from the mere fact that the was killed; something more is required. The plaintiff had the burden of establishing the proximate causal relation of the alleged negligence to the injury and death, and in his search for it he is led into the uncertain realm of conjecture."
Paraphrasing that case, the probabilities, arising from a fair consideration of the evidence in the instant case afford no reasonable certainty on which to ground a verdict.
The judgment below is
Affirmed.