L. W. WALL AND WIFE, LOUISE WALL, v. WENDELL TROGDON AND
TROGDON FLYING SERVICE, INC.

(Filed 25 March, 1959.)

**1. Aviation § 4:    Trespass § 1f—**

The flying of a plane over the land or pond of another does not con-
stitute a trespass unless the flight is at such low altitude as to inter-
fere with the then existing use to which the land or water, or the space
over the land or water, is put by the owner, or unless so conducted as
to be injurious to the health and happiness, or imminently dangerous
to persons or property below. G.S. 63-13.

**2. Same—**

The burden of proof is upon the party asserting a violation of G.S.
63-13, and evidence merely that the plane engaged in crop spraying opera-
tions seen flying over the land of plaintiff at an altitude of 100 feet
or more, without evidence that such flight disturbed any person on the
ground or was imminently dangerous to persons or property, is insuffi-
cient to make out a cause of action for trespass.

**3. Negligence § 19b(1)—**

Plaintiff must show a failure on the part of defendant to exercise
proper care in the performance of some legal duty which he owed plain-
tiff under the circumstances, and that such negligent breach of duty was
a proximate cause of the injury, which is that cause which produces the
result in continuous sequence, and without which it would not have oc-
curred, and one from which any man of ordinary prudence could have
foreseen that such result was probable under the circumstances.

**4. Same—**

Plaintiff must establish every fact essential to constitute actionable negligence as a reasonable probability arising from a fair consideration of the evidence, and not as a mere guess or speculation, otherwise nonsuit is proper.

**5. Aviation § 4:     Negligence § 19b(1)— Evidence held insufficient to show that plaintiff's fish died as result of any negligence in operation of crop spraying plane.**

Plaintiff based his action in negligence on the contention that the cut-off on the crop spraying apparatus on the plane was defective so that the plane in spraying crops on adjacent land emitted the poisonous spray while flying over plaintiff's land in banking and turning, and that fish in plaintiff's pond died shortly thereafter. Plaintiff offered no evidence that the spray actually touched his land, and his expert witness, who examined the dead fish, testified he ruled out several possible causes of death and concluded that the only possible cause of death he could think of would be poison. *Held:* The evidence is insufficient to show a causal connection between the negligence complained of and the death of plaintiff's fish, and therefore nonsuit was correctly entered.

**6. Appeal and Error § 38—**

Assignments of error not discussed in the brief or supported by any authority are deemed abandoned.

APPEAL by plaintiffs from *Olive, J.,* at February 1958 Civil Term of RANDOLPH. Docketed and argued at Fall Term 1958 as No. 524.

Civil action to recover property damage by alleged trespass and negligent acts of defendants in operation of airplane in dusting and spraying crops for hire.

The pleadings admit that the plaintiffs are the owners of a farm in Liberty Township, Randolph County, North Carolina, adjacent to the Guilford County line; that the corporate defendant is a North Carolina corporation, engaged in the business of dusting and spraying crops for hire, owning the airplane therein referred to; and that the individual defendant is an officer, and one of the principals of the corporate defendant, and pilot of the said airplane flown "on the times and occasions * * * complained of," that is, "on the date in question."

Plaintiffs further allege substantially the following:

1. That they have caused dams to be constructed on their premises, thereby creating two ponds or lakes of approximate area of one acre and 1.2 acres, respectively,—one known as the east lake and the other, the west lake, both of which were stocked with fish, principally bass and bream—one being available for commercial fishing.

2. That defendant Trogdon, flying an airplane belonging to corporate defendant, on or about August 8, 1956, was engaged in dispensing "rothane spray" over lands of Frank and Capp Brown, and on or

about August 10, 1956, was engaged in spraying the land belonging to Noah Hester, all adjacent to lands of plaintiffs; that on the former occasion the airplane was operated "extremely close to the ground," turning over and across the lands of plaintiffs and over the smaller of the two lakes; and on the latter occasion was likewise flown over lands of plaintiffs,—banking over the 1.2-acre lake; and on both occasions dispensing "the poisonous rothane insecticide spray," over the waters of plaintiffs' lakes, as a result of which the fish belonging to plaintiffs were killed and the waters rendered unsafe for use in any way, or for any purpose by either man or animal.

3. That on the occasions hereinabove referred to and complained of the spraying mechanism of the defendants' airplane was defective in that it would not shut off the poisonous and deadly gas being dispersed by it; and the defendants knew, or, by the exercise of reasonable care, should have known that said device was defective, and that a dispersal of said poisonous insecticide could endanger or be likely to endanger the life and property of persons on the ground.

4. That on the occasions hereinabove referred to and complained of defendants trespassed over the lands and waters of the plaintiffs and caused them great damage in the pollution of their waters and destruction of the marine life subsisting in them.

5. That in the conduct of their spraying operations on the occasions complained of defendants violated the provisions of G.S. 63-13, in that they flew at an extremely low altitude over the lands and waters of plaintiffs so as to interfere with the use of them.

6. That as a result (1) of the wrongful and unlawful acts of defendants in trespassing over the lands and waters of plaintiff, and (2) of the negligence of defendants in maintaining a defective apparatus on the airplane, plaintiffs have been damaged in large amount.

Defendants answering deny that they have trespassed on the land and waters of plaintiffs or that they have been negligent.

Upon the trial in Superior Court L. W. Wall, plaintiff, testified: "My wife and I are owners of a farm * * * I have done business with Trogdon. I had 2.2 acres of tobacco sprayed. I had occasion to use Trogdon Flying Service in the year 1956, when I had an acre and two-tenths on one farm and the adjoining farm had one acre,—2.2 acres in all. As to the location of my two lakes on this farm, one is located near the northeast boundary; the other just across the line east * * * The west lake is the older * * * constructed in 1952 and stocked with bream that Fall and with bass in the Spring of 1956. The east lake was constructed in 1954, and stocked with bream the following Fall 1954, and with bass the following Spring. We have fished the

west lake some. The east lake has never been fished * * * . On the occasion of August 8, the Trogdon Flying Service was spraying the Brown farm, which is located at the southeast corner of my farm * * * Mr. Elisha Stevenson farms the Brown land. On the occasion of the spraying of the Stevenson tobacco on the Brown land, I was at the northeast corner of my farm. Some spraying had been done on my land that same day. We stayed in the edge of the woods while he was spraying the Stevenson tobacco. I was working in tobacco on my farm. I had tobacco in the field east of my east lake. We had tobacco on the east side of that lake and also on the northeast corner of the farm * * *.

"On the occasion when the Stevenson tobacco was being sprayed, the woods were partially between me and my east lake, and the only time I could see the airplane which was spraying the Stevenson tobacco was when it came over the pines. There is a pine area that lays on the north side of the Brown field and on the south side of the lake.

"On that occasion, I saw the plane come up and make a circle and go back and spray again,— come back up two or three times. Plane made this circle to go back on my land. The plane came up here and around over this lake as it sprayed the Stevenson tobacco on the Brown land * * * I saw it come up and bank around three times * * * which was around 10 o'clock. This was on the east lake. I had occasion to go to my lake in the afternoon about 3:00 * * * When I went to the lake, the fish were jumping up; also tadpoles. The fish were jumping mostly around the edge of the water,— noticed this kind of oily substance on the water * * * I saw the fish jumping. Some of them had done turned over, floating on top of the water. They were dead. The day of the week was Wednesday. On that day I did not personally have contact with the defendants, but my wife did * * * .

"On the Friday following this particular Wednesday, I was working in this field, east lake, and I saw the Trogdon airplane on that occasion * * * he was spraying Noah Hester's land * * * (it) lies north of my farm and * * * the railroad and highway * * * . My west lake is located approximately 300 or 350 yards south of the highway and railroad. On this particular occasion * * * the airplane followed a course over the railroad and banked around somewhere at this lake and back north. The Trogdon airplane flew over another portion of my farm, coming south, and came along here and back over the railroad. I have not given Trogdon Flying Service or Wendell Trogdon any permission to fly over my land and lake. I had tobacco on both sides of the east lake. I did not have Trogdon spray that tobac-

·co * * * the lake on the west side * * * there wasn't anything wrong with the fish in that lake prior to the time I saw the airplane bank over it August 10 * * * on Saturday afternoon * * * I found they were dead."

Then on cross-examination, plaintiff L. W. Wall testified: " * * * We had advised him not to fly over the lake"; that the plane was about 75 feet high; that the pines on his land run over 50 or 60 feet; that he didn't think the plane could have been as high as 150 feet or even 100 feet; that on August 10 it was flying around 100 feet; that he wouldn't say it passed over the (west) lake; that as to what killed the fish in the lake, all he knew was that they died after the plane flew over; that he couldn't say what killed the fish; and that he didn't know who was flying the plane.

And on recall plaintiff L. W. Wall testified that he took dead fish from the west lake to Dr. Lowry of State College, and was present when he examined them.

Mrs. L. W. Wall, plaintiff, testified that she "saw the airplane on the east lake"; that she "saw the plane come up over the pond"; that she saw her pond the next day and observed that the fish were jumping; and that some of the fish were already dead. And on recall she testified that she and Mr. Wall employed the Trogdon Flying Service for tobacco crop spraying— that she actually ordered the service by telephone.

Dr. E. M. Lowry, as witness for plaintiff, was qualified as an expert fishery biologist. He testified that he examined some fish brought to him by plaintiff (plaintiff had testified that the fish were from his pond) to determine why they had died; that as a result of his examination he had ruled out several possible causes; and that "the next possibility that we usually consider is a case of poisoning, and I concluded that the only possible cause of death that I could think of would be poison."

Edward Kime as witness for plaintiffs testified that on August 8, 1956, he was working at his farm across the railroad to the north of the Wall farm; that he saw the plane make a right turn, and bank over the woods towards the east pond; that he saw a stream of something coming out from under the wings; that at the time he saw the stream of solution coming out of the plane, it was flying over Mr. Wall's; that the east lake with respect to the patch of woods was to his left; that the lake was behind the patch of woods; that the plane banked over the woods and went down behind them; that on the next afternoon he had occasion to see the lake; that he saw several dead fish there; that a lot were jumping up out of the water; that he

did not know anything about the other (west) pond; and that when the plane sprayed Mr. Wall's tobacco, it did not spray in the vicinity of his pond.

Wesley Wall, son of and witness for plaintiffs, testified he was working with Mr. Edward Kime in his tobacco; that he saw the plane; that he saw a fluid coming from under the fuselage; that he saw the east lake that afternoon; and that he saw the fish jumping around the edge and on the top not doing anything. On cross-examination he testified that the plane just cleared the tree tops good at the east lake —about 75 or 100 feet high; that the trees were about 30 to 50 feet high; that he didn't know what was coming out of the plane; that it was a liquid; that the plane was not using dust; that "it was spreading out like liquid;" and that he did not examine the substance. On re-direct examination he testified that he did see a substance coming out of the plane and that he could see it was under the bottom of the plane, maybe a little to the left.

Plaintiffs rested their case.

Defendants' motion for judgment as of nonsuit was granted. Plaintiffs appeal therefrom to Supreme Court and assign error.

*Miller & Beck, John Randolph Ingram for plaintiffs, appellants.*
*Walker & Melvin for defendants, appellees.*

WINBORNE, C. J.    It is seen that plaintiffs undertake to ground their alleged cause of action on (1) trespass and (2) actionable negligence. Even so, when the evidence shown in the record of case on appeal is taken in the light most favorable to plaintiffs, and giving to them the benefit of every reasonable inference therefrom, the case in both aspects is left in a state of uncertainty and rests upon possibility.

First, in respect to trespass, it is noted that the General Assembly of 1929 passed an act, Chapter 190, entitled "An Act Concerning Aeronautics and the Regulation of Aircraft, Pilots and Airports," Section 2 (G.S. 63-11) of which in pertinent part reads: "Sovereignty in space above the lands and waters of this State is declared to rest in the State, except where granted to and assumed by the United States"; and Section 3, G.S. 63-12, "The ownership of the space above the lands and waters of this State is declared to be vested in the several owners of the surface beneath, subject to the right of flight described in Section 4."

And in Section 4 of the 1929 Act, now G.S. 63-13, pertaining to lawfulness of flight, the General Assembly further declared: "Flight in

aircraft over the lands and waters of this State is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath * * * ."

This section has been amended in Chapter 1001 Session Laws 1947 by inserting after the word "be" and before the word "imminently" the following words: "Injurious to the health and happiness, or."

So that it is now lawful for aircraft to fly over the lands and waters of this State, *"unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be injurious to the health and happiness, or imminently dangerous to persons or property lawfully on the land or water beneath * * * ."* (Emphasis supplied)

It is, therefore, clear that an aircraft can lawfully fly over the land and water of this State, unless done in violation of the provisions of G.S. 63-13, set forth above. The burden of proof is upon the one asserting such violation. And when testing the sufficiency of the proof the causal connection is deficient.

As to actionable negligence: In an action for recovery of damages for injury resulting from actionable negligence, the plaintiff must show: First, that there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which he owed plaintiff under the circumstances in which they were placed; and, Second, that such negligent breach of duty was the proximate cause of the injury— a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under the facts as they existed. See *Mitchell v. Melts*, 220 N.C. 793, 18 S.E. 2d 406, and cases cited. Indeed there must be legal evidence of every material fact necessary to support a verdict, and the verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities." 23 C.J. 51. *S. v. Johnson*, 199 N.C. 429, 154 S.E. 730; *Denny v. Snow*, 199 N.C. 773, 155 S.E. 874; *Shuford v. Scruggs*, 201 N.C. 685, 161 S.E. 315; *Rountree v. Fountain*, 203 N.C. 381, 166 S.E. 329; *Allman v. R.R.*, 203 N.C. 660, 166 S.E. 891; *Cummings v. R.R.*, 217 N.C. 127, 6 S.E. 2d 837; *Mercer v. Powell*, 218 N.C. 642, 12 S.E. 2d 227; *Mills v. Moore*, 219 N.C. 25, 12 S.E. 2d 661, and numerous other later cases.

If the evidence fails to establish either one of the essential ele-

ments of actionable negligence, the judgment of nonsuit must be affirmed.

In the light of these principles applied to the evidence in the case there is no causal connection between the death of the fish in the lakes and the operation of the aircraft.

In the first place there is no evidence as to elements constituting the spray used in spraying the crops. If there were poison in the spray there is no evidence that it was poisonous to fish. If it were poisonous to fish there is no evidence that the fish died from the poison. Whatever the oily substance seen on the waters of one of the lakes was, there is no evidence as to what it was, or the source from which it came. The testimony of the expert fishery biologist is purely speculative, and founded on possibilities. Indeed the element of proximate cause is missing.

Actionable trespass to land is not made out by merely showing that defendant's airplane crossed the air spaces above it at a low level. Plaintiff must show that such flight was "at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water is put by the owner," or that such flight was "so conducted as to be injurious to the health and happiness, or imminently dangerous to persons or property lawfully on the land or water beneath." Nor is actionable trespass to land made out by merely showing that in crossing the air space above the land a liquid streamed from the airplane, without showing that such liquid made an entry upon the lands or waters of the plaintiff, i.e., landed on plaintiffs' property rather than somewhere else.

Other assignments of error are not discussed, nor is there citation of authority in brief filed in this Court. Hence they are deemed abandoned. See Rule 28 of the Rules of Practice in Supreme Court.

The judgment as of nonsuit is

Affirmed.