FIRST UNION NATIONAL BANK OF NORTH CAROLINA, EXECUTOR OF THE ESTATE OF LEWIS PENN HUNTER, DECEASED v. BURKE FARMERS COOPERATIVE DAIRY, INC., YADKIN VALLEY DAIRY COOPERATIVE, INC., AND RICHARD EDWARD STYLES

No. 7329SC666

(Filed 12 December 1973)

Automobiles § 62— striking of pedestrian walking along highway — insufficient showing of negligence

Plaintiff's evidence was insufficient to show negligence on the part of defendant driver in striking plaintiff's intestate where it tended to show only that the intestate was walking at night in an easterly direction along the south side of the highway, that defendant driver was driving a milk truck in the same direction, that as the milk truck was meeting another vehicle a mirror which extended some eight inches from the truck struck the intestate, that the intestate was found with his head lying "just about on the pavement," and that the total width of the milk truck, including two outside rearview mirrors, might have been a few inches wider than the lane of the highway in which it was traveling, there being no evidence of deceased's position at the time of impact, how long he had been there, or whether defendant driver could have seen him in time to have avoided the collision.

APPEAL by plaintiff from *Thornburg, Judge,* 19 February 1973 Session of Superior Court held in MCDOWELL County.

In this action plaintiff seeks to recover damages for personal injuries sustained by, and the wrongful death of, plaintiff's testate, Lewis Penn Hunter (Hunter), allegedly caused by the defendants' milk truck striking Hunter. From judgment allowing motions for directed verdicts in favor of defendants, plaintiff appeals.

*Everett C. Carnes and Roy W. Davis, Jr., for plaintiff appellant.*

*Dameron and Burgin and Patton, Starnes & Thompson by Thomas M. Starnes for defendant appellee.*

BRITT, Judge.

Plaintiff assigns as error the court's allowance of defendants' motion for a directed verdict in accordance with Rule 50 of the North Carolina Rules of Civil Procedure at the close of plaintiff's evidence. The question of law presented by defendants' motion is whether plaintiff's evidence was sufficient for submission to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

The evidence, viewed in the light most favorable to plaintiff, and giving it the benefit of every reasonable inference, as is required, tended to show:

At about 7:15 p.m. on 26 February 1968, Hunter left his rural home to take a walk, as was his custom, along Fairview Road which intersected Highway 226 across from Hunter's home. Fairview was a rural road, paved with asphalt for a width of approximately 18 feet. It was divided by a center line into two traffic lanes of approximately equal width, and had shoulders on each side of from two to five feet wide.

As Hunter walked eastwardly along the south side of the road, somewhere between 7:15 and 7:30, defendant Styles (Styles) turned east onto Fairview Road, alone in his 1964 Chevrolet one-ton milk truck, en route home with a load of milk for the next day's deliveries. Fairview Road runs east from Highway 226, takes a slight turn to the south, straightens out for about 500 feet with a slight downgrade to a bridge, and then turns sharply to the north. Hunter was some 210 feet east of the first curve when the truck approached him.

The truck was 82 inches in width and carried a refrigerated van for milk. At the front of the cab, about 5 feet behind the

headlights, 5 feet off the ground, and on the outside of each side was a rearview mirror. Each mirror was 6 inches by 8 inches and on an arm of approximately 4 inches so as to extend 8 inches beyond the van of the truck. The lights of the truck were in perfect condition and when on dim had a range of visibility of 100 feet or more.

Just before making the turn from Highway 226 onto Fairview Road, Styles had met another vehicle and had turned his lights to dim, it being dark enough to require lights. Styles entered the first curve on Fairview at a speed of between 25 and 30 m.p.h. and then speeded up to 35 to 40 on the downhill straightaway, the speed limit being 55 m.p.h. Another vehicle approached from the east on Fairview and Styles' attention was directed away from the shoulder to the oncoming vehicle. Proceeding in the middle of the right lane, Styles heard a "thump" on the right side of his truck just before meeting the other vehicle. Styles stopped his truck 100 feet from where he had heard the sound and went back to see what had caused it. He then saw Hunter lying with his head resting on his elbow "just about on the pavement," his feet off the pavement toward the east, and his body at a 45 degree angle with the road and between the road and a fence which ran parallel to the road. Hunter was a rather large man, more than six feet tall, and at the time was wearing a "greenish black" overcoat. With the help of a passerby, Styles took Hunter to the local hospital. In his answer, Styles admitted that at the time he was injured Hunter was walking in an easterly direction "on or near the southern margin of the asphalt surface" of Fairview Road. Later that night Styles examined his truck and found that the right rearview mirror had been "pushed back."

On the next day Robert Rowe visited the scene and found Hunter's hat, watch, and glove 23 feet from the south side of the road in a pasture. The shoulder of the road at this point was about 5 feet wide and then dropped off into a ditch. On the other side of the ditch was a barbed wire fence and then the pasture in which the three articles were found.

Hunter was treated at the local hospital for eight days and released. While there a dislocated left shoulder was "set" and he was treated for other injuries which were external. The day after he returned home from the hospital, Hunter's condition took a turn for the worse and three days later he was carried to a hospital in Asheville. The next day (two weeks after receiv-

ing his injuries) Hunter died from what was later diagnosed as a subdural hematoma and brain injury resulting from an injury to his head.

Plaintiff relies on five theories of negligence: (1) failure to keep a proper lookout, (2) failure to decrease speed in light of a hazard, (3) failure to yield the right-of-way to a pedestrian, (4) failure to pass to the left at a sufficient distance to avoid hitting a pedestrian, and (5) failure to warn deceased of the approach of the vehicle or the danger presented by the rear-view mirror.

A review of the authorities impels us to conclude that the evidence was not sufficient to establish actionable negligence and that the court did not err in allowing the motions for directed verdict.

In *Pack v. Auman*, 220 N.C. 704, 18 S.E. 2d 247 (1942), the evidence tended to show: Around 7:00 p.m. on 8 November 1939, plaintiff's intestate was found, fatally wounded, in a ditch about 3½ feet off the paved portion of the highway, his head being some 2 feet from the pavement. He was taken to a hospital where he died the following day. The scene of the fatality was near the town of Aberdeen and defendant driver drove some two blocks into Aberdeen and reported to Chief of Police Beck that "he had hit somebody up on the highway." Beck and the driver immediately went to the scene of the accident and found a piece of 12 inch board near the center of the highway; the board was broken at an angle, with the short side 2½ feet and the long side 3½ feet in length. Beck compared the piece of board found on the highway to a piece of board found on the truck and the two pieces matched. The driver stated that "he never did see anybody but he thought he felt the truck hit something." There were one or more other pieces of lumber on the truck which had been used to haul gravel, the pieces of lumber having been placed against the standards to hold the gravel. At the time of the accident the truck was empty and there was nothing to keep the lumber from bouncing about, it not being tied or nailed down to the flat floor of the truck. In both directions from the scene of the accident the highway was straight, with an unobstructed view for many yards. At the hospital plaintiff's intestate was found to have a very severe bruise and wound on the lower part of his abdomen. The wound was caused by an external injury, "a rather heavy blow" from "something with an edge on it . . . . " and

resulted in death. In affirming a judgment of nonsuit, the court said:

> "If it be conceded that the plaintiff's intestate was injured and killed upon the highway by being struck by the defendants' truck, or by a board or piece of lumber on said truck, in the absence of any evidence of where on the highway the intestate was at the time of being stricken, or of when he got on the highway, or of how long he had been on the highway before being stricken, the plaintiff's case must fail. The mere fact that he was injured and killed does not constitute evidence that his injury and death were proximately caused by the negligence of the defendants. *Mills v. Moore,* 219 N.C., 25, 12 S.E. (2d), 661, and cases there cited."

The facts in *Whitson v. Frances,* 240 N.C. 733, 83 S.E. 2d 879 (1954), appear to present a stronger case of liability than the facts in the instant case. In *Whitson,* Chief Justice Barnhill summarized the essential evidence as follows: "When the evidence contained in this record is sifted to its essentials and weighed in the balance provided by these rules of law, we find we have just these bare facts established, *prima facie,* by the evidence. The infant defendant was operating a pickup truck on Highway 26 at night. At the time, his right headlight was not on. The decedent, a pedestrian, was on the same highway, headed in the opposite direction. The right front fender struck deceased, apparently throwing his body up between the fender and the hood from which it fell or was thrown down the steep embankment. The decedent received injuries which caused his death. The defendants knew the headlight was not in proper working condition. Everything else is left to pure speculation."

The opinion in *Whitson* is concluded in the following language:

> "Where was deceased when he was struck? Was he standing or walking? If defendant had been keeping a proper lookout and his truck had been equipped with proper headlights, could he have seen deceased in time to avoid the collision, or did deceased fail to yield the right of way or suddenly step in front of the oncoming vehicle?
>
> "Thus it is the testimony does no more than engender speculation. *Ray v. Post, supra.* There is no evidence from which an inference may be drawn either one way or an-

other. Consequently, the line of cases represented by *Pack v. Auman,* above cited, is controlling here . . . . "

In *Whitson* there was a showing that defendant's vehicle had defective lights and that plaintiff's intestate, a pedestrian, was on the side of the highway declared proper for pedestrians by statute. In the instant case, there was no *definite* showing that the milk truck was defective, only the slight inference that its total width including outside rearview mirrors *might* have been a few inches wider than the lane of the paved portion of the road in which it was traveling. The crucial questions unanswered by the evidence in *Whitson* are unanswered by the evidence in the instant case. We think the decisions of the Supreme Court in *Pack* and *Whitson* are controlling here.

This case notes another highway tragedy. The record reveals that the deceased was a valuable citizen, having served in the 1959 General Assembly of North Carolina and from 1961 until his death, he served as postmaster of Marion, N. C. As a colleague of Penn Hunter in the 1959 General Assembly, the writer can attest to Hunter's sterling character and the high quality of his public service. Nevertheless, the evidence presented at trial failed to establish that defendant Styles was legally responsible for Hunter's injuries and death, and actionable negligence on the part of Styles was prerequisite to liability of the other defendants.

The judgment appealed from is

Affirmed.

Chief Judge BROCK and Judge HEDRICK concur.