W. DANIEL BOONE v. C. D. MATHENY, TRADING AS SERVICE CHEVROLET COMPANY.

(Filed 19 April, 1944.)

**1. Master and Servant § 21a: Principal and Agent § 7—**

In an action to recover for personal injuries to plaintiff, a passenger in defendant's wrecking car, from alleged negligence of defendant's driver, where plaintiff's evidence tended to show that defendant's foreman, on application of plaintiff, directed an employee of defendant to take defendant's wrecker and go to plaintiff's damaged car and repair it, plaintiff being invited, in the presence of the foreman, to ride with such employee, and they went to the damaged car, which could not be repaired where it was, and was taken in tow by the wrecker and on the way to defendant's garage the wrecker and its tow ran off the road, overturned and injured plaintiff, motion for judgment of nonsuit, for want of evidence of authority in driver to carry plaintiff as a passenger, was properly overruled.

**2. Negligence § 19a: Automobiles § 18g—**

Where plaintiff, a passenger in defendant's motor vehicle, brings an action to recover damages for personal injuries received from the alleged negligence of defendant's driver, when the car in which they were driving at about 35 to 40 miles per hour, on a paved highway, in fair weather,

about seven-thirty a.m., suddenly left the road, ran down an embankment and turned over, causing the plaintiff injuries, motion for judgment as of nonsuit, for lack of evidence of negligence, properly refused.

## 3. Negligence § 19a—

When a thing which causes an injury is shown to be under the control and operation of the party charged with negligence and the accident is one which, in the ordinary course of things, will not happen if those who have such control and operation use proper care, the accident itself, in the absence of an explanation by the party charged, affords some evidence that it arose from want of proper care.

APPEAL by defendant from *Stevens, J.,* at January Term, 1944, of WAKE.

*Bailey, Holding, Lassiter & Wyatt and Douglass & Douglass for plaintiff, appellee.*
*Smith, Leach & Anderson for defendant, appellant.*

SEAWELL, J. The plaintiff sued to recover damages for injuries sustained in the overturning of defendant's wrecking car in which he was a passenger while the car was being driven by defendant's employee. The injuries were alleged to have been caused by the negligence of the driver. Upon the trial defendant suffered an adverse verdict upon the issues and appealed from the judgment entered thereupon. Pertinent evidence on the points considered is summarized in this opinion.

The appeal, *inter alia,* presented for error the refusal of the trial judge to render judgment as of nonsuit, upon a demurrer to the evidence. G. S., 1-183. Counsel rests the validity of the motion to nonsuit upon (a) a want of evidence showing authority of the driver of the truck, or wrecker, of the defendant to carry plaintiff as a passenger thereon; and (b) the lack of evidence to show that the driver was negligent in the operation of the vehicle which left the highway, ran down an embankment, and overturned, with consequent injury to plaintiff.

1. The evidence discloses that plaintiff, leaving his car about 10 miles from Wake Forest with a flat tire and a damaged wheel, caught a ride into town, and went to defendant's garage and told the foreman about the need of repairs to his car. Thereupon, the foreman instructed a colored man, an employee of defendant, to take a wrecker and go out and make the needed repairs to plaintiff's car. After getting out the wrecker and servicing it with gas, the colored man, in the presence of the foreman, asked plaintiff if he was ready to go, and plaintiff told him he was. He got into the car, or wrecker, and went with the driver to the place where his car had been parked. Upon inspection of the car the colored man said it would have to be towed to the garage, as he was unable to make

the repairs there. The car was hoisted behind the wrecker, taken in tow, and the driver told plaintiff he would have to ride with him in the wrecker, which plaintiff did, down to the point where the vehicle left the highway and was overturned.

Without elaboration, which we think unnecessary, we conclude from these facts and circumstances that the jury might infer, as it did, that the plaintiff became a passenger in the wrecker, and continued as such to the place of his injury, under authority derived from defendant.

2. The evidence as to the occurrence out of which the plaintiff sustained his injury is substantially this: The weather was fair, and the wrecker was being driven along a paved highway, with shoulders on each side. The highway was dry. It was about 7:30 in the morning. The wrecker was running 35 or 40 miles an hour. There was no obstruction of any sort on the highway. The plaintiff testified: "We were on our way back to Wake Forest and had gone about two miles when the Negro suddenly lost control of the wrecker, and it ran off the road on the right-hand side down a fill and turned over." The driver stated that the sun had got into his eyes and that he couldn't see how to drive. To this latter testimony there was objection and exception, but the evidence was introduced in practically the same form later without exception. The witness repeated that it was a fair day and that the sun had just come up at the time.

In support of the contention that there is an utter lack of evidence affording an inference of negligence on the part of defendant, counsel observes that such evidence could only be made to appear by resort to the doctrine of *res ipsa loquitur,* and that the doctrine is inapplicable here, because, when an attempt is made to apply it, the facts do not speak unequivocally of defendant's negligence. Citing *Tartara v. State,* 269 N. Y., 167, 199 N. E., 44, appellant suggests that there is no definitely assignable reason why defendant's wrecker left the road—that it was just as probable that it occurred from a failure of the steering gear as a want of prudent operation; and that the balance of probabilities does not afford such a margin in favor of the theory of negligence as to justify that inference. Counsel supports this view by citations and quotations from *Galbraith v. Busch,* 264 N. Y., 230, 196 N. E., 36, in which the same principle is asserted—namely, that the swerving of the car otherwise unexplained, is as likely to have occurred from a break in the mechanism as from negligent operation; and the opinion adds that since there is no evidence of knowledge on the part of the defendant of any defect in his car, he was under no duty to the injured person with respect thereto.

We question whether the conclusion reached in this comparison of the probabilities of mishap arising from mechanical defects of the car on the one hand, and from the fault of the driver who operates it on the

other, is justified by the common experience of the present day. Vast improvements have been made in automotive machinery since the days of the gasoline buggy with regard to reliability and uniformity of performance. Meantime, the factors of human conduct have remained substantially the same. To the driver who follows the thread of the road even at a moderate speed, situations and events develop in rapid succession, varying in significance, color and configuration. They come almost as varicolored beads on a string, which must be separately counted and appraised as they slip through the fingers. The machine performs without thinking, according to the degree of efficiency built into it by engineering skill and practice. Under the rule of due care, the factor of intelligence involved in observation, outlook and volitional control has put the driver under obligation to many situations in which uniformity of behavior might be less expected. At any rate, the Court has not adopted the view suggested in the cited cases.

We are constrained to rest decision on the rule as explained and applied in *Etheridge v. Etheridge,* 222 N. C., 619, where, with reference to a comparable situation, *Mr. Justice Barnhill,* speaking for the Court, says:

"Hence, this rule has been formulated and generally followed: When a thing which caused an injury is shown to be under the control and operation of the party charged with negligence and the accident is one which, in the ordinary course of things, will not happen if those who have such control and operation use proper care, the accident itself, in the absence of an explanation by the party charged, affords some evidence that it arose from want of proper care. 9 (Part 2) Blashfield, sec. 6034, p. 306; Sherman & Redfield, Negligence (4d) sec. 59; Jaggard, Torts, 938; *Roberts v. Economy Cabs,* 2 N. E. (2d), 128; *Smith v. Kirby,* 178 Atl., 739; *Morrow v. Hume,* 3 N. E. (2d), 39; *Zwich v. Zwich,* 163 N. E., 917; *Howard v. Texas Co.,* 205 N. C., 20, 169 S. E., 832; Anno. 64 A. L. R., 255; *Feldman v. Chicago Railways Co.,* 6 A. L. R., 1291."

This Court has in many instances declined to apply this rule where the facts and evidence were uncertain in their inference or where the cause, or probable cause, of the mishap was known and was not inconsistent with due care. *Springs v. Doll,* 197 N. C., 240, 148 S. E., 251; *Womble v. Grocery Co.,* 135 N. C., 474, 47 S. E., 493; *Fitzgerald v. R. R.,* 141 N. C., 530, 54 S. E., 391; *Dail v. Taylor,* 151 N. C., 284, 66 S. E., 135. In considering the propriety of this mode of proof, the Court has usually made the reasonableness of the inference to be drawn from the facts of the particular case the test of availability. Where there is such a reasonable inference of negligence, it may not be defeated by mere speculative possibility that there may have been another cause.

Moreover, the plaintiff does not depend upon the application of the doctrine of *res ipsa loquitur* to support his case, but on such inferences only as may be reasonably drawn from the facts in evidence. The explanation given by the driver of his difficulty in keeping the road is inconsistent with the theory of fault in the steering apparatus, since he says the car left the road, ran down the embankment, and turned over because he was unable to see on account of the rising sun. This gives rise to the inference that he failed in his duty to stop when visibility was too much impaired for safe driving.

We have carefully examined all the exceptions in the record and do not find in them cause for disturbing the verdict.

In the trial we find

No error.