HAZEL M. LANE v. JESSIE L. DORNEY, Executrix of the Estate of HERBERT G. DORNEY, Deceased, and V. WILTON LANE, Administrator c.t.a. of the Estate of HERBERT S. LANE, Deceased, v. JESSIE L. DORNEY, Executrix of the Estate of HERBERT G. DORNEY, Deceased.

(Filed 8 April, 1959.)

1. Trial § 23a—

Nonsuit is properly entered when the evidence, considered in the light most favorable to the plaintiff and giving him the benefit of every reasonable intendment thereon and every reasonable inference there-

from, raises only a conjecture or speculation as to the determinative issue. G.S. 1-183.

**2. Death § 3—**

In an action for wrongful death, plaintiff has the burden of showing negligence on the part of defendant and that such negligence was the proximate cause of the fatal injury.

**3. Automobiles § 36:    Negligence § 17—**

Negligence is not presumed from the mere fact of injury, but plaintiff has the burden of proving negligence and proximate cause, and when he relies upon circumstantial evidence, he must establish negligence and proximate cause as a reasonable inference from the facts proved and not circumstances which raise a mere conjecture or surmise.

**4. Negligence § 19a:    Trial § 19—**

Whether there is enough evidence to support a material issue is a matter of law.

**5. Automobiles § 41a—**

Evidence tending to show merely that a person driving an automobile at a lawful speed along a dry, paved highway, ran off the highway to his right just beyond a bridge, after a curve, causing the car to go over an embankment and overturn, killing two passengers therein, without any evidence of any obstruction or defect in the road, prior swerving of the car, traffic, or any unusual happening prior to the accident, *is held insufficient to be submitted to the jury on the issue of the negligence of the driver as the proximate cause of the accident.*

**6. Negligence § 3½—    Applicability of doctrine of res ipsa loquitur.**

While the doctrine of *res ipsa loquitur* applies in proper cases when an instrumentality is shown to be under the control of defendant and the accident is such as does not occur in the ordinary course of things if the person having control of the instrumentality uses proper care, the doctrine does not apply when all the facts are known and testified to, where more than one inference can be drawn from the evidence as to the cause of the injury, where the existence of negligence is not the more reasonable probability or the matter is left in conjecture, where it appears that the accident was due to an act of God or the tortious act of a stranger, where the instrumentality is not under the exclusive control or management of defendant, or where the injury results from an accident as defined by law.

**7. Appeal and Error § 59—**

An opinion of the Supreme Court must be considered within the framework of the facts of the particular case in which it is rendered.

**8. Automobiles §§ 36, 41a—**

The doctrine of *res ipsa loquitur* does not apply to evidence showing merely that an automobile suddenly and for some unexplained reason ran off the highway and overturned, there being no evidence of excessive

LANE *v.* DORNEY.

speed, reckless driving or failure to exercise reasonable control and lookout. *Etheridge v. Etheridge*, 222 N.C. 616, modified.

HIGGINS, J., dissenting.
BOBBITT, J., concurs in dissent.

APPEAL by plaintiffs from *Armstrong, J.*, at September 1958 Civil Term of GUILFORD (Greensboro Division), being No. 605 at Fall Term 1958, and brought forward to present No. 595.

Two civil actions to recover of Jessie L. Dorney, Executrix of Herbert G. Dorney, (1) for personal injuries to plaintiff Hazel M. Lane, and (2) for wrongful death of plaintiff's testate Herbert S. Lane, allegedly proximately caused by negligence of defendant's testate Herbert G. Dorney, deceased, by consent consolidated for trial.

The allegations bearing upon the negligence of testate of defendant are substantially the same in both complaints, i.e., that "at about 8:20 P.M. on October 18, 1954," plaintiff Hazel M. Lane and her husband, Herbert S. Lane, testate of plaintiff V. Wilton Lane, were riding as passengers and guests "in an automobile which was owned and being operated at the time by defendant's testator, Herbert G. Dorney, en route from Greensboro, North Carolina, to High Point, North Carolina, on the highway between Pomona, North Carolina, and High Point, North Carolina."

That "while operating said automobile, as set out" (above) * * * "as said automobile approached the curve in said highway which is immediately to the northeast of said highway's bridge over Deep River, defendant's testator Herbert G. Dorney caused said automobile to run off the paved portion of said highway and over the embankment of said highway at said point and to crash below," as a result of which plaintiff Hazel M. Lane suffered injury, and testator Herbert S. Lane was killed.

And that the injuries and damages and death were "caused solely by the carelessness and negligence of defendant's testator, Herbert G. Dorney, in that, in driving said automobile, as set out * * * defendant's testator, Herbert G. Dorney, failed to keep a proper lookout for the course and condition of said highway and particularly for the curve on said highway" and failed to keep said automobile under proper control and on the paved portion of said highway and caused said automobile to run off the paved portion of said highway and over said embankment and to crash below.

Defendant answered, denying the allegations of negligence.

The case on appeal shows that a pre-trial hearing was had. In the Pre-Trial Order the following appears:

"2. It is judicially stipulated by all of the parties to this action as follows:

"(c) That at about 8:20 P.M., on October 18, 1954, the late Herbert G. Dorney was operating a 1950 Tudor Oldsmobile '54 N.C. License 70-474; owned by him, along N. C. Highway No. 68 between Pomona and High Point, Guilford County, North Carolina, at a point about six miles northeast of High Point and that the late Herbert S. Lane was riding in the front seat of the car; Hazel M. Lane and Jessie L. Dorney were riding in the back seat."

And upon the trial plaintiff offered evidence.

Jessie L. Dorney, defendant, as Executrix in both cases, was called as an adverse witness by the plaintiffs, and testified substantially as follows:

"After we got out of Greensboro in the county, I do not know how many miles per hour Mr. Dorney was driving the car. From the time we left my home as we went down the road, there was no change in the position of any of the parties in the car * * * . From the time we left until the wreck, Mrs. Lane and I were engaged in conversation with each other in the back seat. I was not noticing particularly what was going on as far as the driving was concerned. Mr. Dorney was 62 years old at that time, nearly 63. He was perfectly well and had no impairment in his health of any kind at that time.

"I do not know whether the car ran off the road and over an embankment at the point of the Deep River Bridge about 6 miles northeast of High Point. I know now that this car was involved in a wreck on the way to High Point. I was not conscious of anything unusual happening on the road before this car was involved in this crash. I do not know whether there was any skidding of the car before the crash. I was conscious of none. I was not conscious of any swerving of the car while it was on the paved portion of the road. I was not conscious of the car hitting anything in the road or anything of that sort. * * * Mr. Dorney and Mr. Lane were killed in the wreck. I do not know the condition of the road at or near the point of the wreck that night with reference to it being wet or dry. I have no recollection of the surface itself. I am not aware of any unusual traffic conditions at that particular point that night. On that road, I was not aware of any unusual traffic conditions. I was not conscious of any unusual happening on the road as long as the car was on the road itself. * * * I do not know whether the car struck the concrete steps that led down into the river bottom and I do not know whether it struck the ap-

proach to the bridge or just what it struck. * * * I was told that the car was completely demolished * * * ."

On cross-examination Mrs. Dorney testified as follows:

"Mrs. Lane and I were engaged in conversation as my husband was driving the automobile along the highway. I presume that the lights on the car were burning. I don't know the mileage from my house to the point of the accident, but it was quite some distance. As the car was being driven along the highway by my husband there was nothing unusual about the way he was driving that attracted my attention. I did not realize that there was an accident or that there was going to be an accident until the moment of a great impact."

And on redirect examination, she testified as follows:

" * * * Just before the accident occurred, I was engaged in conversation with Mrs. Lane. I was not paying any attention to the road or to Mr. Dorney, or to Mr. Lane."

C. T. Pierce testified substantially as follows:

"I am a sergeant with the North Carolina State Highway Patrol * * * In that capacity, I investigated an automobile crash on the night of October 18, 1954. The investigation was at approximately 8:45 P. M., on the "Red Road" running from Pomona to High Point * * * . The accident occurred six miles north of High Point on this Pomona Road. When I arrived at the scene of the accident about 8:55 P. M., I found a 1950 model Oldsmobile, two-door, overturned on the south end of the bridge over Deep River. The license number of the car was NC 70-474, 1954 license. * * * I examined the condition of the road around the point of this accident. Approaching this bridge from Greensboro, traveling in the direction of High Point, there is a long, rather sweeping curve to the left and at the bottom— this is down grade— and at the bottom of this hill is a bridge over Deep River with cement abutments on each side of the bridge. The road at the point of the bridge is approximately 18 feet wide. The paved portion of the road is about the same, 18 feet wide, standard road. It is 18-foot standard leading up to the point and in both directions from the bridge. That condition existed on the night of October 18, 1954. The weather condition on that night was cloudy. The road was dry. In my investigation, I found no obstruction in the road of any kind * * * I found no defects of any kind in the road. This highway was and is a part of the North Carolina Public Highway System. The highway composition was tar and gravel * * * I examined the condition of the car, but I do not recall the details. In my examination of the road at the point, I did not find any skid marks of any kind on the

pavement. I did not find anything of any nature about the condition of the highway at that point that was unusual in any respect."

On cross-examination, the witness added substantially the following:

"The road runs northeast towards Greensboro and southwest towards High Point * * * At the point where the road crosses the bridge, the bridge itself is straight. As I recall, the road was straight to the southwest and northeast of the bridge for some distance. * * * With reference to defendant's exhibit 1, marked for identification, my recollection now is that the top of the bridge abutment was actually below the surface of the pavement. Unlike most bridges, there was no rail or anything along the sides. I found the 1950 Olds overturned at the south end of the bridge. I don't recall whether it was partly in the river, but it was down below the surface of the road, some distance beyond the bridge. That was at the end of the bridge toward High Point. The bridge ran north and south with the south end toward High Point and the north end toward Greensboro. The vehicle was off the west side of the bridge near the south end of the bridge.

"When I arrived there * * * my recollection is that * * * the car was upside down resting on the top * * * ."

And on redirect examination the witness testified as follows:

"The shoulders of this road were roughly 3 feet wide on each side of the pavement. Just before you get to the bridge coming from Greensboro, I observed at a point 22 feet north of the little abutment enclosing the steps that went down the hill at the bridge * * * a tire mark leading over to the steps. By a tire mark, I mean an indenture in the shoulder of the road. The nature of the tire mark was an indenture in the shoulder of the road leading off from the edge of the pavement over to the steps. I don't recall whether it was exactly straight or not."

Plaintiffs offered in evidence photograph marked for identification "Defendant's Exhibit 1."

Plaintiffs offered evidence on the issue of damages, and then rested their cases. Defendant's motion for judgment as of nonsuit in both cases consolidated for trial was allowed. Plaintiffs except thereto and from judgment in accordance therewith appeal to Supreme Court, and assign error.

*McLendon, Brim, Holderness & Brooks for plaintiffs, appellants.*
*Jordan, Wright & Henson, Wharton & Wharton for defendant, appellee.*

WINBORNE, C. J.   This is the question involved on this appeal, as

stated in brief of plaintiffs: Did the Superior Court commit error in granting defendants' motion for judgment of nonsuit at the close of the plaintiffs' evidence?

Taking the evidence offered by plaintiffs, as shown in the record of case on appeal, in the light most favorable to the plaintiffs, giving to them the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom, as is done in considering demurrer to the evidence, G.S. 1-183, a negative answer to this question is deemed proper.

In an action for recovery of damages for personal injury or for wrongful death from actionable negligence of defendant, plaintiffs must show: (1) That there has been a failure on the part of defendant to exercise proper care in the performance of some legal duty which the defendant owed the plaintiffs under the circumstances in which they were placed; and (2) that such negligent breach of duty was the proximate cause of the injury, a cause that produced the result in continuous sequence, and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed. *Whitt v. Rand*, 187 N.C. 805, 123 S.E. 84; *Mintz v. Murphy*, 235 N.C. 304, 69 S.E. 2d 849; *Wall v. Trogdon*, 249 N.C. 747, and cases cited.

Negligence is not presumed from the mere fact of injury or that testator was killed. *Mills v. Moore*, 219 N.C. 25, 12 S.E. 2d 661, and numerous later decisions in approval.

There must be legal evidence of every material fact necessary to support a verdict, and the verdict "must be grounded on a reasonable certainty as to probabilities arising from a fair consideration of the evidence, and not a mere guess, or on possibilities." 23 C.J. 51. *Wall v. Trogdon, supra.* If the evidence fails to establish either one of the essential elements of actionable negligence, the judgment of nonsuit must be affirmed. Whether there is enough evidence to support a material issue is a matter of law. *Mills v. Moore, supra.*

Moreover, in *Sowers v. Marley*, 235 N.C. 607, 70 S.E. 2d 670, in opinion by *Ervin, J.*, it is appropriately stated: "In an action for death by wrongful act based on negligence, the burden rests on the plaintiff to produce evidence, either direct or circumstantial, sufficient to establish the two essential elements of actionable negligence, (deleting citations), namely: (1) That the defendant was guilty of a negligent act or omission; and (2) that such act or omission proximately caused the death of the decedent * * * To carry this burden by circumstantial evidence, the plaintiff must present facts which reasonably warrant the inference that the decedent was killed by the

actionable negligence of the defendant * * * An inference of negligence cannot rest on conjecture or surmise * * * This is necessarily so because an inference is a permissible conclusion drawn by reason from a premise established by proofs * * * ."

Indeed, an accepted and sound rule of law and logic is that the facts from which an inference of negligence may be drawn must be proved, and cannot themselves be inferred or presumed from other facts which merely raise a conjecture or possibility of their existence. See 20 Am. Jur. Evidence, Sec. 165,— recognized with approval in the *Sowers* case.

And in *Parker v. Wilson*, 247 N.C. 47, 100 S.E. 2d 258, opinion by *Parker, J.,* this principle is applied in this manner: "When in a case like this the plaintiff must rely on the physical facts, and other evidence, which is circumstantial in nature,-to show that Donald Wilson was driving the automobile at the time of the wreck, he must establish attendant facts and circumstances which reasonably warrant this inference (citing cases). Such inference cannot rest on conjecture or surmise * * * 'The inferences contemplated by this rule are logical inferences reasonably sustained by the evidence, when considered in the light most favorable to the plaintiff' * * * 'A cause of action must be something more than a guess' * * * A resort to a choice of possibilities is guesswork, not decision * * * To carry his case to the jury the plaintiff must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts."

Testing plaintiffs' evidence by these principles in determining its sufficiency to show negligence of testate of defendant in the operation of the automobile, the question is left in the realm of conjecture and surmise. Just what happened to bring about the "great impact," as characterized by Mrs. Dorney, is pure guesswork. And the rule of *res ipsa loquitur* upon which plaintiffs rely is inapplicable.

Under decisions of this Court in actions based on actionable negligence, and there is no definite evidence as to what caused the accident and no evidence of negligence except the bare fact that the accident occurred, and plaintiff therefore seeks to maintain her action by applying the rule *res ipsa loquitur*, the rule is as stated in *Scott v. London Docks Co.*, 159 Eng. Rep. 665, that "There must be reasonable evidence of negligence, but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, or affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose

from want of care." See among others *Saunders v. R.R.*, 185 N.C. 289, 117 S.E. 4; *Lea v. Light Co.*, 246 N.C. 287, 98 S.E. 2d 9.

But decisions of this Court uniformly hold that the principle of *res ipsa loquitur* "does not apply (1) when all the facts causing the accident are known and testified to by the witnesses at the trial * * * ; (2) where more than one inference can be drawn from the evidence as to the cause of the injury * * * ; (3) where the existence of negligent default is not the more reasonable probability, and where the proof of the occurrence, without more, leaves the matter resting only in conjecture * * *; (4) where it appears that the accident was due to a cause beyond the control of the defendant, such as the act of God or the wrongful or tortious act of a stranger * * *; (5) when the instrumentality causing the injury is not under the exclusive control or management of defendant * * *; (6) where the injury results from accident as defined and contemplated by law." *Springs v. Doll*, 197 N.C. 240, 148 S.E. 251.

Nevertheless plaintiffs, appellants, relying principally upon *Etheridge v. Etheridge*, 222 N.C. 616, 24 S.E. 2d 477, contend that the doctrine of *res ipsa loquitur* is recognized in North Carolina as applicable to unexplained automobile accidents.

In this connection it must be noted, however, that "Every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered,"— so declared Chief Justice Marshall, writing in 1807 in *U. S. v. Burr*, 4 *Cranch*, 469, at 481. And this rule has been expressed in many opinions before this Court. See cases listed in Strong's N. C. Index, Vol. 1, Appeal and Error, Sec. 59, including *Carpenter v. Carpenter*, 244 N.C. 286, 93 S.E. 2d 617 (1956), where in opinion by *Bobbitt, J.*, after speaking of statements in our decisions "which, when considered apart from the factual situations under consideration, tend to support plaintiff's contention," added "But we are mindful of the apt expression of *Barnhill, J. (later C.J.)*: 'The law discussed in any opinion is set within the framework of the facts of that particular case * * * .' " *Light Co. v. Moss*, 220 N.C. 200, 17 S.E. 2d 10.

With this rule in mind, it is seen that the factual situation in the *Etheridge* case, as stated in the opinion of the Court, is this: "On Sunday 27 April, 1941, plaintiff and defendant, brothers, were returning to Whitakers, N. C., from Bellamy's Mill in an automobile owned and operated by defendant. Defendant was driving about 35 miles per hour on a dirt road. As they approached an intersection or fork in the road defendant passed another vehicle going about 20 miles per hour. 'He swerved around that car and ran into that intersection

and lost control of the car and ran in the ditch (on the right) and the car turned over. He crossed the intersection and was making the bend to the left and the speed he couldn't make it and hit the bank on the right side. After you crossed the intersection the road curves to the left.' The car ran into the ditch and turned over. Defendant passed the car before reaching the intersection and the car turned over 100 to 150 feet beyond the intersection. It was dusty at the time. Defendant offered evidence tending to show that as he crossed the intersection his car hit a 'kinder' bump, went to the right and stayed on the right-hand side until the accident occurred. He tried to turn back to the middle of the road but could not. He does not know why. He applied his brakes 'but they did not seem to take hold.'"

And it will be noted in the opinion, after first discussing the related facts, it is said: "This evidence, except as one of several circumstances, does not tend to show negligence. Is there, then, any sufficient evidence of want of due care, requiring the submission of the cause to a jury? The statute prohibits the operation of a motor vehicle without due caution and circumspection or at a speed or in a manner so as to endanger or be likely to endanger any person or property, Sec. 102, Chap. 407, Public Laws 1937, or at a speed greater than is reasonable and prudent under the conditions then existing * * * Plaintiff's complaint, liberally construed, alleges a violation of these provisions of our Motor Vehicle Laws. We are constrained to hold that he has offered evidence tending to support the allegation."

The reason for the decision is merely that this evidence of the violation of the statute prohibiting reckless driving was sufficient to require submission of the case to a jury. (The opinion might have stopped here.) Appellee contends, and rightly so, that this limitation of the effect of the *Etheridge* case is recognized in *Riggs v. Motor Lines,* 233 N.C. 160, 63 S.E. 2d 197, and *Stegall v. Sledge,* 247 N.C. 718, 102 S.E. 2d 115, in which cases the *Etheridge* case is cited for the proposition that the evidence tended to show excessive speed or reckless driving.

Moreover, appellees contend, and we hold properly so, that much of what was said in *Etheridge* case was *obiter dicta,* and that what the case actually holds is: "When a motorist drives an automobile around a curve at such a speed that he cannot make the curve and runs into a ditch bank, causing his car to overturn, all of which the evidence offered tends to show, a jury may find that he is guilty of actionable negligence in the violation of G.S. 20-140"; and that "the case also stands for the proposition that under these circumstances the jury may decline to believe defendant's explanation that he lost control be-

cause of striking a bump in the road or was unable to retain control
because of sudden failure of his brakes." Thus when the *Etheridge*
case is closely scrutinized it is found that it does not hold that the doc-
trine of *res ipsa loquitur* has been adopted in this State in automobile
accident cases. Manifestly it does not support the proposition that a
case is made for the jury by merely showing that an automobile ap-
parently suddenly and for some unexplained reason leaves the high-
way and overturns in a creek bed,— there being no evidence of exces-
sive speed, reckless driving, or failure to exercise reasonable control
and lookout.

Indeed the opinion in the *Etheridge* case quoting from *Springs v.
Doll, supra,* states that it, the doctrine of *res ipsa loquitur,* does not
apply * * * (2) where more than one inference can be drawn from the
evidence as to the cause of the injury; (3) where the existence of neg-
ligent default is not the most reasonable probability, and where the
proof of the occurrence, without more, leaves the matter resting only
in conjecture * * * (6) where the injury results from accident as de-
fined and contemplated by law. In this aspect compare *Lea v. Light
Co., supra.*

It may be also noted and appellee calls attention to the fact that
in the North Carolina cases cited by appellant there is testimony in
the record comprising evidence of facts and circumstances, other than
the mere occurrence of the accident from which an inference of negli-
gence might be drawn. And it would seem that this is true of cases
cited from other jurisdictions.

Further it is noted that in the case in hand the evidence discloses
nothing except that there was an unexplained and mysterious upset of
the car being driven by testator of defendant. He died in the accident.
Thus the record leaves the case wholly in the area of speculation and
conjecture.

Hence, for reasons stated, the judgment as of nonsuit is
Affirmed.

HIGGINS, J., dissenting. From the evidence, which is fully and
fairly stated in the opinion, I draw inferences different from those ex-
pressed by the Chief Justice.

The evidence at the trial disclosed that Mr. Dorney, the driver,
and Mr. Lane were in the front seat of the Oldsmobile, engaged in
conversation. Their wives were in the back seat, similarly occupied.
The hard surface highway over which they were traveling was 18
feet wide, dry, and free of obstruction. If nothing appeared in this
case except the physical evidence of the wreck, I should be inclined

to go along with the opinion on the ground that the cause of the wreck might have resulted from mechanical defects, a sudden seizure of the driver, or the vehicle might have been forced off the road by the negligence of some other traveler on the highway. But Mrs. Dorney's evidence tends to remove these contingencies.

The evidence is plenary that Mr. Dorney, driving downhill on an unobstructed highway, failed to make a curve to the left, ran off the road to the right, wrecked the vehicle, with the fatal result. The tire marks for 22 feet on the shoulder of the road, the imprint on the concrete abutment enclosing the steps, the position of the vehicle resting on its top on the other side of the river, indicate the driver lost control. The evidence permits the inference that the loss of control did not result from defects in the vehicle, incapacity of the driver, or intervening negligence of another traveler. According to Mrs. Dorney, "He (Mr. Dorney) was perfectly well and had no impairment in his health—I was not conscious of anything unusual happening before this car was involved in this wreck—I was not conscious of any swerve of the car while it was on the paved portion of the road."

In the absence of any plausible explanation as to what caused the wreck, we are left with the permissible inference that it resulted from the driver's failure to use due care to keep his automobile under proper control, to keep a proper lookout for and observe the course and condition of the highway. Failure to use due care is negligence.

"In the absence of obstructions, defects in the road or car or other supervening cause, the wreck of a car under the circumstances disclosed (overturned on curve) readily warrants an inference of negligence in operation." *Etheridge v. Etheridge,* 222 N.C. 616, 24 S.E. 2d 477; *Tatem v. Tatem,* 245 N.C. 587, 96 S.E. 2d 725; *Hensley v. Harris,* 242 N.C. 599, 89 S.E. 2d 155; *Boone v. Matheny,* 224 N.C. 250, 29 S.E. 2d 687.

The evidence, in my opinion, was sufficient to require its submission to the jury. I vote to reverse.

BOBBITT, J., concurs in dissent.