365 F.Supp.2d 1015 (2004)
UNION PACIFIC RAILROAD COMPANY, Plaintiff,
v.
INCHCAPE SHIPPING SERVICES, et al., Defendants.
No. 4:02-CV-1695 (CEJ).
United States District Court, E.D. Missouri, Eastern Division.
June 16, 2004.
*1016 Michael B. Hunter, Williams and Venker, St. Louis, Daniel T. Rabbitt, Rabbitt and Pitzer, Robert P. Schmidt, Williams and Venker, Theodore J. Williams, Jr., Williams and Venker, St. Louis, MO, for Plaintiff.
Julia R. Brouhard, Ray and Robinson, P.L.L., Cleveland, OH, Greg J. Erickson, Sr., Fox Galvin, LLC, Ronald E. Fox, Fox Galvin, LLC, St. Louis, MO, Gene B. George, Ray and Robinson, P.L.L., Cleveland, OH, Dennis E. Rose, Donovan and Rose, Belleville, IL, Jon W. Spencer, Donovan and Rose, Belleville, IL, for Defendants.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court on the motion of defendant ISS Marine Services, Inc. to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56. Plaintiff Union Pacific Railroad Company opposes the motion and the issues are fully briefed.
This action arises from the derailment of a train operated by plaintiff Union Pacific Railroad Company (Union Pacific) near Dexter, Missouri, on May 22, 1999. Plaintiff contends the derailment occurred because improperly loaded coiled steel shifted inside a rail car. Plaintiff brings this negligence action against defendants CT Stevedoring, Inc. (CT), which loaded the steel, and ISS Marine Services, Inc., as successor in interest of Inchcape Shipping Services, Inc. (collectively, "Inchcape").
I. Background
Hyundai Merchant Marine Company, Ltd., (Hyundai) transported twenty-two coils of steel from South Korea aboard the M/V Pacific Prince. The steel was originally intended for shipment to Camden, New Jersey, but mid-voyage, the purchaser requested that the steel be offloaded at the Port of Houston and shipped overland.
Hyundai had an agreement with defendant Inchcape for Inchcape to provide "ship husbanding services" to Hyundai for vessels in the Gulf Coast region. Before the M/V Pacific Prince docked in Houston, Hyundai contacted Inchcape employee Susan Brody and directed her to obtain quotes from truck and rail companies for transport of the steel. Brody in turn contacted Dawn Weindel, a Union Pacific employee, who provided quotes that Brody included in the information that she forwarded to Hyundai. Ultimately, Hyundai decided to transport the steel by rail and directed Brody to contact Union Pacific and arrange for the services.
Defendant Inchcape asserts, and plaintiff does not dispute, that Hyundai contracted with defendant CT for stevedoring services in Houston. Brody testified that Inchcape's involvement with CT was limited to transmitting documents identifying the cargo and its location. CT offloaded the steel from the ship and loaded it into four gondola cars. Once the cars were loaded, CT faxed Brody the "check sheets" completed by the loader. The check sheets included the notation that the "pier loading charges and demurrage are for the account of Hyundai Shipping." Brody contacted Weindel at Union Pacific to inform her that the rail cars were loaded and to discuss the railroad bills of lading.
Weindel faxed several documents to Brody, including a "letter quote," which listed the cargo, the destination and route, and applicable rates. Weindel also gave *1017 Brody a blank short-form bill of lading. Brody testified that she was unfamiliar with rail shipping but she completed a separate bill of lading for each rail car, using CT's check sheets to supply information regarding car numbers and weight. One of the boxes requested the identity of the shipper. Brody wrote "Inchcape Shipping" in that box on two of the four bills of lading, leaving the box blank on the other two forms. At deposition, Brody could not recall who advised her to name Inchcape as the shipper but testified that it must have been someone from Union Pacific, Inchcape, or Hyundai. Brody faxed the completed bills of lading and CT's check sheets to Union Pacific.[1]
The letter quote indicated that it was issued for the "account of" Inchcape and was subject to "the provisions of UP 4 SERIES." The parties agree that Inchcape did not receive a copy of the UP 4 Series in connection with this transaction. Union Pacific alleges that the "UP 4 Series" incorporates by reference the "AAR loading rules."[2] In support of this allegation, Union Pacific submits a document from its General Rules & Governing Provisions. The one-page document, labeled "EXEMPT 4-D" and entitled "ITEM NO. 10  Adoption Notice (Continued)," provides a list of "National Tariffs, Circulars & Publications," including "AAR Circulars, Manuals, Registers, Rules." Plaintiff has not provided other evidence to support its contention that EXEMPT 4-D is part of the UP 4 Series incorporated into the letter quote.
II. Legal Standard
Defendant Inchcape moves for dismissal under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. The parties have submitted documents and deposition testimony in support of their respective positions on the issue and thus the Court will treat the motion solely as one for summary judgment.
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing *1018 sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
III. Discussion[3]
Plaintiff's negligence claim against Inchcape is based on the premise that "[a] shipper of goods by common carrier who undertakes to load the shipment is under a duty to exercise reasonable care to do so in a manner reasonably safe ..." Wright v. B.F. Huntley Furniture Co., 197 F.Supp. 117, 121 (M.D.N.C.1961) (quoting 9 Am.Jur., Carriers § 468). Inchcape argues it is not liable to plaintiff because (1) it was acting solely as Hyundai's agent, (2) it cannot be found negligent based upon the conduct of CT, an independent contractor hired by Hyundai, (3) Inchcape's entry as the shipper on the bills of lading was the product of misunderstanding or mistake, and (4) Inchcape had no notice of plaintiff's loading requirements. The Court finds that Inchcape is entitled to summary judgment based on the second point, and declines to address the remaining arguments.
There is no dispute that CT, not Inchcape, actually loaded the steel. Plaintiff nevertheless argues that Inchcape assumed the duty to safely load the steel when its employee Brody listed it as shipper on two out of the four bills of lading. Failure to discharge a duty arising from the bills of lading arguably could be grounds for an action for breach of contract. See Grus v. Patton, 790 S.W.2d 936, 942-43 (Mo.App.1990) (remedy for negligent performance of contractual duty arises under contract, not tort). See also AmeriFreight v. APL Land Transp. Services, Inc., 1997 WL 250484 at *5 (N.D.Ill.1997) (shipper listed on bill of lading may be liable for unsafe loading by its independent contractor only under breach of contract theory). Plaintiff has not asserted a breach of contract claim against Inchcape, however, and cannot prevail on its negligence claim.
Accordingly,
IT IS HEREBY ORDERED that the motion of defendant ISS Marine Services, Inc. for summary judgment [# 83] is granted.
Judgment in favor of defendant ISS Marine Services, Inc., shall be entered following disposition of plaintiff's claim against defendant CT Stevedoring, Inc.
NOTES
[1] Weindel did not recall seeing the completed forms. The billing instructions Weindel provided to Brody directed her to fax the documents to Union Pacific's customer service center, while Weindel worked in the sales and marketing department.
[2] "AAR" apparently stands for the Association of American Railroads. Union Pacific contends that CT failed to follow the AAR loading rules.
[3] The parties agree that the applicable laws of Texas, where the cars were loaded, and Missouri, where the cars derailed, are substantially similar and that the outcome would be the same under the laws of either state.